UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO JAKOSALEM,<br><br>Plaintiff,<br><br>v.<br><br>AIR SERV CORPORATION,<br><br>Defendant. | Case No. 13-cv-05944-SI<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

On December 12, 2014 the Court heard argument on defendant's motion for partial summary judgment. Having considered the arguments of the parties and the papers submitted, the Court hereby **DENIES** defendant's motion for partial summary judgment.

## BACKGROUND

Named plaintiff Mario Jakosalem worked as a cabin cleaning agent for defendant Air Serv Corporation ("Air Serv") at San Francisco International Airport. Docket No. 12, Complaint ¶ 8. Air Serv is a business which provides an array of services to commercial airlines, including cleaning, ground transportation, and security services. *Id.* ¶ 11. The complaint alleges causes of action under California state law for: (1) failure to pay minimum wage, (2) failure to provide compensation for missed or improperly recorded meal periods, (3) failure to provide compensation for missed or improperly recorded rest periods, (4) failure to pay overtime compensation, (5) failure to furnish accurate wage statements, (6) failure to reimburse for business expenses, (7) waiting time penalties, (8) civil penalties, and (9) California's Unfair Competition Law ("UCL"). *Id.* ¶¶ 54-133. Plaintiffs bring this lawsuit on behalf of "[a]ll current and former hourly or non-exempt employees of Defendants who worked in the State of California at any time from the date

1  of the filing of this action through the entry of final judgment in this action." *Id.* ¶ 45.

2  Plaintiff filed the Complaint on October 24, 2013 in San Francisco County Superior Court. On December 23, 2013, defendant removed this action to federal court pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d); Docket No. 1. Now before the Court is Air Serv's motion for partial summary judgment. Docket No. 23.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill*

2

*Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

**I.      The Effect of the Day Divide**

Air Serv brings its motion for partial summary judgment to adjudicate a single issue: whether its method of calculating daily hours worked violates provisions of the California Labor Code requiring payment of overtime for work in excess of eight hours in a workday.[1]

California Labor Code Section 510(a) provides in pertinent part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a). "Workday" is defined as "any consecutive 24-hour period commencing at the same time each calendar day." Cal. Lab. Code § 500.

Like many other companies, Air Serv has selected midnight as the beginning of a workday. Docket No. 23, Def. Mot. at 2, nt. 2. Due to the nature of the services defendant provides, roughly a third of its employees work night shifts that cross the day divide. Docket No. 24-1, Uriarte Decl. ¶ 2. Plaintiff contends that employees working such shifts are entitled to overtime whenever they work in excess of eight hours during one shift, regardless of whether their shift crosses the day divide. Conversely, defendant contends that pursuant to the language of Sections 500 and 510, overtime is only due for work in excess of eight hours *in a single workday*. To illustrate, suppose an employee works a ten-hour shift commencing at 10 p.m. on Monday, and ending at 8 a.m. on Tuesday. Plaintiff argues that such employees are entitled to two hours of overtime pay (from 6 a.m. to 8 a.m.); while defendant contends that they are not entitled to any overtime pay because they have not worked more than eight hours in any one workday.

The California Division of Labor Standards Enforcement Enforcement Policies and

---

[1] In his opposition, plaintiff raises the issue of Air Serv's failure to properly account for weekly overtime. However, adjudication of that question is beyond the purview of defendant's motion.

3

Interpretations Manual ("DLSE Manual")[2] states that "an employee's workday need not coincide with the beginning of that employee's shift, and an employer may establish different workdays for different shifts." DLSE Manual ¶ 48.1.2. The manual than proceeds to give the following illustrative example:

> A factory worker whose usual shift is 7 a.m. to 3 p.m. has an established workday beginning at 7 a.m. On Tuesday night she is asked to work a special extra shift from 11 p.m. to 7 a.m. Wednesday. Since she has already worked eight hours on Tuesday, she is due time and a half beginning at 11 p.m. on Tuesday night until 3 a.m. and double time from 3 a.m. to 7 a.m. However, because her workday begins at 7 a.m. she may be paid straight time wages from 7 a.m. to 3 p.m. (her regular shift) on Wednesday regardless of the fact that the time worked is continuous.

DLSE Manual ¶ 48.12.1.

The example contemplates a scenario where the employee's shift coincides with her workday, which is not particularly instructive in answering the question posed by this motion: whether a single shift which exceeds eight hours, spanning two workdays, is eligible for overtime pay even though the employee worked for less than eight hours in any one workday. Nonetheless, it does suggest that overtime calculations should be based on the amount of work completed by an employee during any single twenty-four hour workday period, regardless of whether the employee works continuously through the day divide.

The only case to address the precise issue raised in this motion is *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007).[3] There, the court found that

---

[2] "[W]hile agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts, agency interpretations are not binding or . . . authoritative. Courts must, in short, independently judge the text of [a] statute." *Bonnell v. Med. Bd. of California*, 31 Cal. 4th 1255, 1264 (2003), *citing Yamaha Corp. of Am. v. State Bd. of Equalization*, 19 Cal. 4th 1, 7 (1998); *see also Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896, nt. 3 (C.D. Cal. 2005) (finding DLSE policy statement unpersuasive and non-controlling in light of *Bonnell*).

[3] It appears the issue was also raised in *Andino v. Kaiser Found. Hospitals*, No. C 11-04152 CW, 2011 WL 5883975 (N.D. Cal. Nov. 23, 2011); however the case was remanded to

4

plaintiffs stated a claim for failure to pay overtime where employees worked a single shift in excess of eight hours which crossed the day divide set by the employer. In arriving at this conclusion, the *Wal-Mart* court was guided by the legislature's policy goals in enacting California's overtime laws. In light of the fact that "California's overtime laws are remedial and are to be construed so as to promote employee protection," *Wal-Mart*, 505 F. Supp. 2d at 617, *citing Sav-on Drug Stores, Inc. v. Superior Court,* 34 Cal.4th 319, 340 (2004), it found the first sentence of Section 510(a) -- which "bluntly states [that] '[e]ight hours of labor constitutes a day's work'" -- to be dispositive.[4] *Id.*

While the first sentence of Section 510(a) establishes the length of "a day's work" as eight hours, the second sentence establishes that overtime pay is due only where work in excess of eight hours (a day's work) is completed in a single workday. Reading these two sentences together suggests that the designation of the workday bears at least some relation to an employee's entitlement to overtime. *See Petition of Pub. Nat. Bank of New York*, 278 U.S. 101, 104 (1928) ("a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Plaintiff's interpretation risks rendering the second sentence of Section 510(a) mere surplusage, and moreover reads in a shift-based overtime requirement for which there is no explicit statutory support.[5]

---

state court and the issue has yet to be addressed.

[4] Some courts have read *Wal-Mart* as deciding the issue less on statutory interpretation grounds, and primarily because the employer failed to provide a *bona fide* business reason for its day divide other than reducing overtime pay. *Abshire v. Redland Energy Servs., LLC*, 822 F. Supp. 2d 874, 877 (W.D. Ark. 2011) *aff'd*, 695 F.3d 792 (8th Cir. 2012) (summarizing the holding as "employer's pay policy violated the FLSA [*sic*] because no reason given for policy other than avoiding paying overtime."); *Andino v. Kaiser Found. Hospitals*, No. C 11-04152 CW, 2011 WL 5883975, at *3 (N.D. Cal. Nov. 23, 2011) ("The court ruled that an employer cannot circumvent the overtime pay provisions of the California Labor Code by starting the workday in the middle of a shift that would otherwise require overtime pay."); *Seymore v. Metson Marine, Inc.*,194 Cal. App. 4th 361, 371 (2011) ("Metson's definition of the workweek appears as an attempt to evade the requirements of sections 500 and 510 no different from the method disapproved in the Wal–Mart case.").

[5] The California Legislature knows how to create shift-based requirements, which suggests that it may have opted not to do so here. *See* IWC Wage Order No. 4-2001 § 3(B)(1) (an

5

## II. *Bona Fide* Business Reason

*Seymore v. Metson Marine, Inc.*, 194 Cal. App. 4th 361 (2011), addressed an issue analogous to the one faced by this Court: whether an employer's designated workweek violated Section 510(a)'s grant of overtime pay for work performed on the seventh consecutive day of any workweek. In *Seymore*, employees worked for 14-day stints on the employer's boat, providing emergency cleanup of hazardous waste; employees began work at noon on Tuesday, and finished two weeks later at noon on Tuesday. The employer designated the workweek as beginning at midnight on Monday, which allowed the employer to pay employees only one seven-day premium, despite the fact that they worked fourteen consecutive days. The court held that "an employer may designate a workweek used to calculate compensation that differs from the work schedule of its employees only if there is a *bona fide* business reason for doing so, which does not include the primary objective of avoiding the obligation to pay overtime." *Id.* at 371. This holding is consistent with the DLSE Manual, as well as with many opinions addressing analogous provisions of the Fair Labor Standards Act ("FLSA")[6] and California law. DLSE Manual ¶ 48.1.2 ("once a workday is established it may be changed only if the change is intended to be permanent and the change is not designed to evade overtime obligations."); *Huntington Mem'l Hosp. v. Superior Court*, 131 Cal. App. 4th 893, 910 (2005) ("The bottom line is this: An employer may not engage in a subterfuge or artifice designed to evade the overtime laws."); *Lamon v. City of*

---

alternative workweek "shall provide for not less than four (4) hours of work in any shift."). "Wage orders are quasi-legislative regulations and are construed in the same manner as statutes under the ordinary rules of statutory construction." *Securitas Sec. Servs. USA, Inc. v. Superior Court*, 197 Cal. App. 4th 115, 121 (2011).

[6] "California wage laws are patterned on federal statutes, federal cases and regulations interpreting those federal statutes may serve as persuasive guidance for interpreting California law." However, "federal law does not control unless it is more beneficial to employees than the state law." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 593-94 (2000) (internal citations omitted).

6

*Shawnee, Kan.*, 972 F.2d 1145, 1152 (10th Cir. 1992) ("an employer may not impose sham changes in its employment scheduling and compensation policies so as to evade the Act."); *Allen v. Gonzales Consulting Servs., Inc.*, No. 1:10-CV-61, 2011 WL 202088, at *2 (W.D. Mich. Jan. 19, 2011), *citing* 29 C.F.R. § 778.105. ("The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act."); *Oliver v. Centerpoint Energy, Inc.*, No. CIV.A.H-10-0189, 2010 WL 2163915, at *5 (S.D. Tex. May 27, 2010) (granting summary judgment in favor of employer because there was no evidence the workweek was maintained for "the purpose of evading the FLSA's overtime requirements.").

Air Serv concedes that it may not establish a day divide which has the purpose of reducing the overtime pay of its employees. Instead, it argues that its midnight day divide is in line with industry standards and best practices, provides ease of administration, and should therefore be upheld. Air Serv advances a number of arguments in support of this contention; the Court shall address them in turn.

First, Air Serv presents the Court with three hypothetical scenarios to demonstrate the effect of the midnight day divide on various work schedules. Def. Mot. at 4-5. Air Serv concludes that only in one scenario would an employee earn less pay under its midnight day divide system, than he would if overtime were calculated based on hours worked in a shift.[7] Plaintiff counters that "[a]t this juncture, it is impossible to verify whether Defendant's fabricated scenarios have any basis in reality." Docket No. 24, Pl. Opp'n at 4. The Court agrees. These hypothetical scenarios are entirely untethered to any facts or data relevant to this case. They do not constitute evidence which may be used to demonstrate the absence of a genuine issue of material fact.

---

[7] "[T]his situation only occurs when the employee's shift exceeds 8 hours, crosses the day divide and the employee does not work a subsequent shift (such as at the end of the week)." Def. Mot. at 6.

Next, Air Serv argues that "there is simply no evidence that [it] selected midnight to gain benefit over its employees" because the majority of its employees do not work shifts that cross the day divide, and thus earn more pay with a workday that begins at midnight. Def. Mot. at 6. Defendant submits payroll evidence on one "randomly selected" workday and concludes that "257 of 588 [employees] working earned some amount of overtime. And of those earning overtime, only 86 worked across the midnight day divide, whereas 256 of the employees worked over the noon hour." *Id.*; *see also* Docket No. 23-2, Jones Decl. Exh. F. This argument is problematic for a number of reasons. First, there are many conceivable scenarios where a day divide that affects only a minority of employees would still constitute a forbidden attempt to reduce overtime pay. For example, while a minority of Air Serv employees may be adversely affected by the day divide, these employees may also command disproportionately high base hourly pay rates. Second, using, as a starting point, the number of employees who earned some overtime is a form of selection bias because it improperly ignores all the employees who may have earned overtime had the day divide not been set at midnight. Finally, there is nothing in the record to suggest that analyzing payroll data from a single day would allow a trier of fact to make any statistically significant conclusions about the effect of Air Serv's day divide on overtime pay.

Next, Air Serv argues that the day divide is part of a collective bargaining agreement ("CBA"), and was "negotiated by the employees, through their union representatives, during arm's length negotiations. Thus there is nothing that raises the specter of unfairness." Def. Mot. at 7. It is true that a bargained-for day divide may give rise to such an inference. *See Seymore* 194 Cal. App. 4th at 370, *citing Calypso Ice Cream, Inc v. Gov't of Virgin Islands*, 266 F. Supp. 412 (D.V.I. 1967). However, as plaintiff points out, the CBA only addresses the terms of the workweek, not the workday. Jones Decl. Exh. A. In response, Air Serv counters that "[t]he establishment of the weekly divide *by definition* creates the day divide, as sure as Saturday defines the placement of Sunday on a monthly calendar." Docket No. 25, Def. Rep. at 1 (emphasis in original). Given these

dueling interpretations, the Court finds that there is triable issue of fact as to whether employees meant to consent to a midnight day divide through the terms of the workweek detailed in the CBA.

Air Serv's arguments all rest on the presumption that because Section 500 defines the term "workday," then "[a]s a matter of law . . . *some designated workday must therefore exist*" which may incidentally affect an employee's overtime pay. Def. Mot. at 6 (emphasis in original). Air Serv directs the Court to cases holding that an employer's designated workweek did not violate FLSA even where it incidentally reduced certain employee's overtime pay. *See e.g. Oliver v. Centerpoint Energy, Inc.*, No. CIV.A.H-10-0189, 2010 WL 2163915 (S.D. Tex. May 27, 2010). However, these cases may be distinguished on a number of grounds. First, FLSA has no provision requiring daily overtime pay. Second, while federal regulations require employers to define a workweek, 29 C.F.R. § 516.2(a), there is no analogous law requiring employers to establish a workday under California state law. Third, the fact that the DLSE Manual provides that "an employer may establish different workdays for different shifts," DLSE Manual ¶ 48.1.2., may render suspect an employer's insistence on maintaining a single workday for all employees when it causes a significant reduction in overtime pay. Fourth, establishing a single workday for all employees is likely to have a greater effect on daily overtime pay than a uniform workweek would have on weekly overtime pay. As Air Serv implicitly concedes, an employee who works a shift in excess of eight hours and crosses the day divide may *only* recoup lost overtime by working a second shift on the same day that his first shift ended. Conversely, an employee adversely affected by a week divide would theoretically have more flexibility to take on additional shifts over a seven day period. This suggests that determining whether an employer's workday is a subterfuge to evade overtime pay may require more searching scrutiny than in the case of an employer-designated workweek. In short, the reasoning of the FLSA cases which Air Serv cites cannot simply be applied wholesale to the case at bar, without further analysis. *See Seymore* 194 Cal. App. 4th at 368, *citing Monzon v. Schaefer Ambulance Service, Inc.* 224 Cal.App.3d 16, 31

(1990). ("federal authority is persuasive insofar as it does not conflict with the remedial purposes of the California labor laws.").

Air Serv has introduced scant evidence on the question of whether its workday serves a *bona fide* business purpose or is merely a pretense for reducing its payroll costs. Vague references to concerns regarding the administrability of maintaining more than one workday and questionable inferences drawn from incomplete payroll data do not meet the high bar of demonstrating that there is "no genuine issue of material fact." Accordingly, the Court DENIES defendant's motion for partial summary judgment.[8]

**IT IS SO ORDERED**.

Dated: December 15, 2014

SUSAN ILLSTON
United States District Judge

---

[8] The Court finds that Air Serv has also failed to provide Jackosalem with the payroll records necessary for him to adequately oppose defendant's motion. Uriarte Decl. ¶¶ 5, 7-8. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . deny" the motion for summary judgment. Fed. R. Civ. P. 56(d)(1). Rule 56(d) therefore serves as an independent ground for denial of this motion.